In the Matter of the Application of FANNIE F. SILVERMAN, on Behalf of Herself and All Other Bondholders and Stockholders of Master Printers Building Operating Corporation, Similarly Situated, Appellant-Respondent, against OLIVER P. ALFORD et al., Respondents, and HOWARD PETERSON et al., Individually and as Directors and Officers of Master Printers Building Operating Corporation, et al., Respondents-Appellants.

First Department, December 15, 1944.

*Jacob Greenwald* of counsel (*Kleeberg & Greenwald,* attorneys), for petitioner-appellant and respondent.

*Robert H. O'Brien* of counsel (*Horace J. McAfee* and *Edward R. Loomie* with him on the brief; *Simpson, Thacher & Bartlett,* attorneys), for defendants Howard Peterson, Hamilton C. Rickaby and John P. Daly, respondents-appellants.

*Jules Roth* of counsel (*Benjamin, Galton & Robbins,* attorneys), for defendant Master Printers Building Operating Corporation, respondent-appellant.

GLENNON, J. The petitioner is a stockholder and bondholder of Master Printers Building Operating Corporation hereinafter referred to as Master Printers, which was organized in this State on August 17, 1931.

Master Printers owns certain improved real estate in the city of New York. Prior to the incorporation of Master Printers, the property was owned by Kymson Building Corporation and was subject to a consolidated bond and first mortgage in the principal amount of $2,800,000. The bond and mortgage was held by Chatham Phenix National Bank and Trust Company, as indenture trustee, to secure $2,800,000 First Mortgage 6½% Sinking Fund Gold Loan Certificates which had been issued under the terms of a consolidation agreement entered into by the bank and the then owner of the property.

This proceeding is based upon article 4-A of the Real Property Law, commonly referred to as the Streit Act. By her petition, made on behalf of herself and all others similarly situated, the petitioner sought the removal of certain officers and directors of Master Printers on the ground that the officers and directors were ineligible; and the repayment to the corporation of all compensation paid to its officers since June 8, 1936, the effective date of the Streit Act, on the ground that such payments were made without the approval of the Supreme Court pursuant to the provisions of the Streit Act pertaining to voting trustees and voting trust agreements. An allowance to her attorney for services in this proceeding is also sought.

This proceeding was commenced in the month of October, 1943. The facts which led up to it may be summed up as follows: As a result of defaults which occurred under the bond and mortgage and consolidation agreement, on or about May 29, 1931, the bank, as trustee, instituted an action to foreclose the mortgage. During the pendency of the foreclosure action a so-called Certificate Holders' Protective Committee was formed, composed of respondents Oliver P. Alford, Robert M. Hopkins, L. Albert Gjobye and Howard Peterson. This committee solicited and received deposits of the defaulted loan certificates from a majority of certificate holders and promulgated a plan of reorganization.

Pursuant to the plan, Master Printers was incorporated on or about August 17, 1931, and according to the petition, on or about October 30, 1931, acquired title to the mortgaged premises by a deed made by the referee in the foreclosure action. After title was obtained, the certificate holders assenting to the plan of reorganization received capital stock and 6% income debenture bonds of the corporation in exchange for their loan certificates. The dissenting certificate holders were paid in cash. The petitioner herein, having assented to the plan, received forty shares of capital stock of Master Printers and $4,100 of its income debenture bonds.

The reorganization was effected during the month of October, 1931, without recourse to any action or judicial proceeding. The foreclosure action, as we have seen, was instituted prior to the formation of the certificate holders' committee and the promulgation of the plan of reorganization.

After the formation of Master Printers, the four individuals who comprised the certificate holders' committee, and the respondent Hamilton C. Rickaby, as voting trustees under a voting trust agreement dated November 1, 1931, elected themselves as directors. All of the directors except Rickaby became officers of the corporation. It appears that two of their number remain as officers and directors, while one now serves only as an officer.

The petitioner contends that, pursuant to the provisions of section 130-c of the Real Property Law, the members of the certificate holders' committee became ineligible to continue as voting trustees, officers or directors of the corporation on and after June 8, 1936, the effective date of the Act, unless they first complied with the provision of subdivision 1 of section 130-c which reads as follows: " 130-c. *Voting trustees and voting trust agreements.*

" 1. No trustee or member of a committee or the attorney of such trustee or committee or any employee of either shall be eligible to become a voting trustee or an officer or director of a corporation to be formed or used under a plan of reorganization to acquire title to property previously administered by such trustee or committee unless the facts with respect to their previous connection with the property are disclosed to the court and the affirmative approval of the holders of at least fifty-one per centum of the mortgage investments is obtained or unless a plan of reorganization approved by the court in proceedings under section one hundred and twenty-two of this chapter shall so provide."

We believe the justice presiding at the Additional Special Term was correct in dismissing that branch of the proceeding based upon subdivision 1 for the removal of officers and directors who had previously served upon the certificate holders' committee. That subdivision has no application here. By its terms it is limited to corporations formed or used after its enactment, and then applies only to those corporations which " acquire title to property previously administered " by a trustee or committee. Master Printers was formed and functioned long prior to the effective date of the law and acquired no property which had been previously administered by the certificate holders' committee.

That portion of the petition which seeks an accounting and reimbursement from the individual respondents for the salaries paid to officers subsequent to June 8, 1936, is based upon subdivision 3 of section 130-c which reads as follows: " 3. No salary or other compensation shall be paid to any voting trustee or any officer or director of a corporation formed or used to acquire the title to property in or through reorganization unless the same has been approved by the court."

Master Printers, as we have seen, was organized by the bondholders of Kymson Building Corporation who had assented to the plan of reorganization. Those who became stockholders of Master Printers in 1931 approved the voting trust agreement which was entered into in that year. Directors were elected by the voting trustees and re-elected annually until the year 1941 when the agreement expired. Beginning with 1942 the directors have been elected by the stockholders.

It should be borne in mind that section 130-c is entitled: " *Voting trustees and voting trust agreements.*" Since the purpose of article 4-A was to remedy the abuses arising out of certain reorganizations and to provide for their supervision and regulation, section 130-c must have been intended as a safeguard against any abuse that might arise out of certain voting trust agreements. Subdivision 3 thereof applies only during the time that such voting trust agreements are in existence. It does not purport to affect salaries paid to officers chosen by directors elected by the stockholders themselves. At this point it might be proper to point out that the total yearly salaries paid by Master Printers to its officers during the existence of the voting trust agreement amounted to $8,400 as against $7,800 per year paid subsequent to the expiration of the agreement. The difference between the two is relatively slight when it is considered that by virtue of a consolidation of offices there are now three officers instead of five.

At the time of the organization of Master Printers in 1931 there was no requirement for the judicial approval of mortgage reorganizations. It was not until years later that the Burchill Act (L. 1933, ch. 729), the Schackno Act (L. 1933, ch. 745) and the Mortgage Commission Act (L. 1935, ch. 19) were enacted. None of those enactments conferred jurisdiction upon the court to regulate the internal affairs of corporations such as Master Printers. They provided the means whereby reorganizations could be accomplished without unanimous consent. As the court pointed out in *Matter of Lawyers Mortgage Co.* (277 N. Y. 244), the remedy offered by the Schackno Act was an extraordinary

one in that it authorized the adoption of plans for the reorganization of the rights of holders of mortgage investments without unanimous consent. The Mortgage Commission Act which followed in 1935 supplemented and in some respects modified the Schackno Act, but it did not affect the requirement of consent from the holders of at least two thirds of the principal amount of the mortgage investment. The Burchill Act (Real Property Law, §§ 119-123) also permitted the approval of plans of reorganization without the unanimous consent of the bond or certificate holders.

Many of the reorganizations which followed the enactment of this legislation included as part of the plan approved by the court the formation of a corporation to take title to the property and the execution of a voting trust agreement. Once the plan went into operation the court lost all jurisdiction it might have had over the selection of voting trustees or the internal affairs of the corporation. Any abuses thereafter arising out of the voting trust agreement could not be remedied by the reorganization court since the corporation which came out of the judicial reorganization was on the same footing as any other domestic corporation. With the enactment of the Streit Act in 1936 the jurisdiction of the court was extended to certain affairs of the corporation, limited however to the time during which the voting trust agreement was in effect.

In construing subdivision 3 of section 130-c, it is to be read and considered together with the entire section and the Act in which the section is found. (*People ex rel. Mason et al.,* v. *McClave,* 99 N. Y. 83; *Price* v. *County of Erie,* 221 N. Y. 260, 266.) There is nothing in the Streit Act to indicate that the Legislature had in mind voluntary reorganizations which had taken place over the years when judicial approval of such reorganizations was not required. On the contrary, section 130-c clearly reveals an intent to limit its applicability to corporations which acquired title to real property in or through judicial reorganizations. This is manifest by the frequent use of the term " approved by the court " and the requirement that facts are to be " disclosed to the court ". In what manner and to what court a corporation such as Master Printers is to apply is not indicated. In subdivision 1 " affirmative approval of the holders of at least fifty-one per centum of the mortgage investments " is required before certain individuals may become voting trustees, officers or directors. That requirement is dispensed with where a plan of reorganization under the Burchill Act has been approved by the court and provides for the appointment of the individuals specified in subdivision 1 as

voting trustees, officers or directors. Again in subdivision 2 it is provided that the voting trust agreement may be extended upon the affirmative approval of the holders of 51% of the stock. Obviously the Legislature had in mind involuntary reorganizations, involuntary in the sense that not all who had received stock had consented to the plan.

In the absence of a clearly expressed or implied intention to the contrary, it cannot be said that it was the intent of the Legislature to have the law cover voluntary reorganizations which had taken place many years before the Streit Act and years before the first legislation on such reorganizations was enacted.

The case of *Wolf* v. *Roosevelt* (290 N. Y. 400), relied on by the petitioner, is distinguishable. There it was held that subdivision 2 of section 130-c did not apply to a voting trust agreement entered into prior to the effective date of the Act. While it might be said that by implication at least the section was held applicable to corporations formed before the enactment of the law, it must be noted that the corporation there involved arose out of a reorganization under section 77B of the Bankruptcy Law (48 U. S. Stat. 912).

In view of the conclusion we have reached it becomes unnecessary to pass upon the other questions raised.

The order insofar as appealed from by the defendants-appellants should be reversed, with twenty dollars costs and disbursements to said defendants-appellants, and the petition dismissed.

TOWNLEY, COHN and CALLAHAN, JJ., concur; MARTIN, P. J., concurs in result.

Order so far as appealed from by the defendants-appellants unanimously reversed, with twenty dollars costs and disbursements of said defendants-appellants, and the petition dismissed. Settle order on notice.